IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


SUSAN M. DENNIE,

    Plaintiff,

vs.                                       Case No.  1:14cv235-MP/CAS

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB).  After careful consideration of the entire record, it is respectfully recommended that the decision of the Acting Commissioner be affirmed.

**I. Procedural History**

    On June 10, 2011, Plaintiff, Susan M. Dennie, filed an application for DIB benefits alleging disability beginning July 6, 2007, based on fibromyalgia, t-cell

deficiency, osteopenia, bursitis (immune system attacking self), and arthritis.[1]  R. 20, 132-35, 157, 161.  (Citations to the record shall be by the symbol "R." followed by a page number that appears in the lower right corner.)  Plaintiff's date last insured for DIB was December 31, 2012.  R. 20, 157.

Plaintiff's application was denied initially on August 12, 2011, and upon reconsideration on December 16, 2011.  R. 20, 88-102.  On December 19, 2011, Plaintiff requested hearing.  R. 20, 101.  On December 5, 2012, Plaintiff appeared and testified in a hearing in Jacksonville, Florida, conducted by ALJ Lisa B. Martin. R. 31-49. Plaintiff was represented by Pamela C. Dunmore, an attorney.  R. 20, 122, 124-25.  At the beginning of the hearing, the ALJ asked Plaintiff's counsel if she had anything to add to the record that apparently was sparse and counsel responded that she did not. R. 34.  At the close of the hearing, the ALJ advised, as she partially did at the beginning of the hearing, *id.*, that she was sending Plaintiff for an internal medicine examination to focus on a fibromyalgia examination, "[f]ocusing on the different tender points," and also for a psychological examination.  R. 47-48.

On March 13, 2013, the ALJ advised Plaintiff's counsel that she had secured additional evidence such as consultative examination results from Lance Chodosh, M.D., R. 299-313 (Exhibit 5F, Dec. 31, 2012), and Chris J. Carr, Ph.D., R. 314-321 (Exhibit 6F, Feb. 25, 2013), and that counsel could make written comments regarding

---

[1] During the hearing before the Administrative Law Judge (ALJ), Plaintiff's counsel amended the alleged onset date to March 24, 2010, R. 34, 44.  Doc. 15 at 2. Plaintiff's prior application was denied by ALJ Deborah A. Arnold on March 23, 2010, and the Appeals Council denied Plaintiff's request for review of that decision on September 6, 2011.  R. 71-78, 82-87.

these reports and request a supplemental hearing.[2] R. 204.  It does not appear that Plaintiff made any comments regarding the two reports or requested a supplemental hearing.

On May 2, 2013, the ALJ issued a decision denying Plaintiff's application for benefits.  R. 20-27.  On July 3, 2013, Plaintiff filed a request for review.  R. 14-16.  On July 31, 2013, the Appeals Council granted Plaintiff an extension of time and authorized Plaintiff to submit any new and material evidence.  R. 7-8.  On October 27, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-6; see 20 C.F.R. § 404.981.

On December 15, 2014, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision.  Doc. 1.  The parties filed memoranda of law, docs. 15 and 16, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2012."  R. 22.

2. Plaintiff "did not engage in substantial gainful activity during the period from related onset date of July 6, 2007, through her date last insured of December 31, 2012."  Id.; see supra at n.1 re: amended alleged onset date.

3. "Through the date last insured, [Plaintiff] had the following severe impairments: fibromyalgia; chronic pain disorder; left hip disorder; bilateral shoulder issues; and irritable bowel syndrome."  R. 22.  The ALJ determined that Plaintiff's allegations of psoriasis and adjustment disorder were non-severe and further noted that the record revealed "no history of formal or informal mental health treatment and a diagnosis of psoriasis is not noted in the record."  Id.

---

[2] Dr. Chodosh provided an initial consultative examination report on August 11, 2011.  R. 211-19.

4. "Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 23.
5. "[T]hrough the date last insured, [Plaintiff] had the residual functional capacity [RFC] to perform the full range of medium exertional work as defined in 20 CFR 404.1527(c)."  R. 24.

6. "Through the date last insured, [Plaintiff] was capable of performing past relevant work as a cashier-checker and a deli clerk.  This work did not require the performance of work-related activities precluded by [Plaintiff's RFC]."  R. 26.  The ALJ noted that Plaintiff's past relevant work is described in the Dictionary of Occupational Titles (DOT) as cashier-checker and was designated as light exertion and semi-skilled with a Specific Vocational Preparation (SVP) rating of 3 and deli clerk was designated as medium exertion and unskilled with an SVP rating of 2.  The ALJ compared Plaintiff's RFC with the physical and mental demands of this work and found that she was able to perform these jobs as generally performed.[3]  R. 26-27.

7. Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 6, 2007, the alleged onset date, through December 31, 2012, the date last insured."  R. 27; *see supra* at n.1.

## III.  Legal Standards

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant

---

[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 404.1568(b).  An SVP of 1 or 2 corresponds to unskilled work whereas an SVP of 3 or 4 corresponds to semi-skilled work.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at 7-8 (Dec. 4, 2000).  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month" whereas an SVP of 3 means "[o]ver 1 month up to and including 3 months."  Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  In part, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. § 404.1567(b).

evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. See 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairments?

    3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

    4.  Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

    5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips v. Barnhart, 357 F.3d 1232, 1237

---

[4]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

(11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV. Evidence

### Medical evidence and other evidence

In her six page memorandum, Plaintiff does not take issue with the ALJ's factual findings.  Doc. 15.  Rather, Plaintiff only argues that the ALJ erred, as a matter of law, because she did not expressly refer to Social Security Ruling (SSR) 12-2p, 2012 SSR LEXIS 1 (eff. July 25, 2012) in her decision when she determined that Plaintiff was not disabled in light of her severe impairment of fibromyalgia.  Doc. 15 at 4-5.  Plaintiff does not specifically refer to any evidence in the record.  Doc. 15.

The ALJ's RFC findings are included and supplemented where necessary.

> The medical evidence of record reveals the claimant presented to Dr. Wilda Murphy initially on September 13, 2007, with complaints of increasing pain throughout her body.  Testing revealed multiple pain behaviors and Dr. Murphy noted that the claimant's severe emotional overlay obviated detailed examination.  Dr. Murphy opined that the claimant's subjective complaints and displays are greater than would be expected given the objective medical evidence.  She determined that than [sic] rehabilitative medicine, the claimant should seek help for her emotional issues.  Dr. Murphy's diagnosis included history of fibromyalgia per claimant's report and chronic pain syndrome.  She limited the claimant to lifting 20 pounds on an occasional basis and stated she should be in a progressive exercise program (Ex. 1F).[5]

---

[5] *See* R. 207-10.  Dr. Murphy's September 13, 2007, examination report was completed well before Plaintiff's amended alleged onset date of March 24, 2010.  *See supra* at n.1.  ALJ Arnold, in the prior case, considered Dr. Murphy's September 13, 2007, initial office visit.  R. 76.  Plaintiff was examined and treated for fibromyalgia in 2007, *see, e.g.*, R. 76, 221-25, and in later years, *see, e.g.*, R. 245-68 (Hal M. Brodsky, M.D., Gainesville Family Physicians-2008-09).  ALJ Arnold refers to several of

The claimant underwent physical consultative examination on August 11, 2011, with Dr. Lance Chodosh. She provided a diffuse and not completely credible history. Range of motion testing showed limitations in the cervical spine, lumbar spine, shoulders, and hips. Dr. Chodosh opined that based on the objective evidence, the claimant can sit, stand, bend, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. There were no physical signs of impairment (Ex. 2F).[6]

On December 7, 2011, the State agency physician noted that the claimant could perform a perform [sic] light exertional work activity (Ex. 3A). At my request, the claimant underwent a second physical consultative examination on December 31, 2012, and was again seen by Dr. Chodosh. The claimant reported she is independent in activities of daily living. Following thorough examination, Dr. Chodosh diagnosed chronic pain without physical signs of impairment and determined that based on objective evidence, the claimant could sit, stand, walk, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. Of note is that she exerted less than full effort on grip testing though there were no credible deficits. The claimant indicated inability to remove or replace the cap on a small bottle, which Dr. Chodosh considered a behavioral manifestation rather than a credible deficit. Her standing balance was normal, but her initial gait was slow and stiff with nonspecific abnormality. The claimant declined to squat and rise. Range of motion testing revealed minor restrictions in the claimant's cervical spine, lumbar spine, and shoulders. Dr. Chodosh determined the claimant could lift and/or carry up to 100 pounds and sit for two hours at a time for a total of six hours in an eight-hour workday, stand for two hours at a time for a total of six hours in an eight-hour workday, and walk for two hours at a time for a total of four hours in an eight-hour workday. She had no limitations in using her upper or lower extremities and could perform postural activities without limitation. Additionally, the claimant had no environmental limitations (Ex. 5F).[7]

---

Dr. Brodsky's patient notes. R. 76. Plaintiff was examined by Dr. Brodsky on September 19, 2011. Dr. Brodsky notes: "She has been off medicines for over a year. Just got an inheritance, so that is why she is here. She swears she is not on any meds and does not see any doctors. Has not been to health department." R. 280. The notes continue: "UF Dr. Stoud told her she is addicted to Neurontin and trmadol [sic] and needed to come off them to enter his clinical trial. She has 'all the classis [sic] symptoms of withdrawal'." *Id.* Plaintiff was described, in part, as alert, cooperative and well groomed, not in acute distress, oriented X4, with normal posture, gait, and voice. *Id.* There is a note that Dr. Lance Chodosh performed an evaluation on August 11, 2011, and then stating "she is NOT DISABLED," attributing the latter to Dr. Chodosh. R. 282.

  [6]  *See* R. 212-19 (Exhibit 2F), 289-96 (Exhibit 3F).

  [7]  *See* R. 299-312 (Exhibit 5F).

Dr. Chodosh's examination findings suggest the claimant has some spinal limitations, but not to the extent that would prevent her from performing medium work. The examination fails to reveal significant orthopedic disorders normally associated with the need to limit lifting/carrying, and normally limiting prolonged standing and sitting tasks (e.g. significant orthopedic knee disorder, or upper extremity dysfunction or arthritis). The light work assessment from the non examining DDS medical professional is therefore given little weight.

The claimant attended a mental consultative examination on February 25, 2012, at my request. Dr. Chris Carr noted there was no history off formal or informal mental health treatment. The claimant could perform self-care duties and do domestic chores and cook. The claimant was capable of managing finances and had a valid driver's license. She engaged in conversation appropriately. Dr. Carr diagnosed adjustment disorder with depression and anxiety, mild symptoms and rule out pain disorder due to psychological factors. In Dr. Carr's opinion, the claimant did not need mental health treatment. In a Medical Source Statement, Dr. Carr noted that the claimant had no limitation in the ability to understand, remember, and carry out instructions, and no limitation in the ability to interact appropriately with supervisors, coworkers, and the public, or in responding to changes in a routine work setting (Ex. 6F). Dr. Carr's assessment is consistent with the bulk of the record showing little evidence of a significant mental disorder. The claimant's hearing demeanor, her ability to interact with others, maintain a routine, and her ability to perform job tasks to earn some money to sustain herself all reflect positively in the claimant's ability to sustain a routine, concentrate, persist in the performance of work tasks, and engage socially with others.[8]

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In assessing credibility, the claimant has described a wide array of activities that can be rather demanding and are not the type expected given her complaints of disabling symptoms and limitations. The claimant performs chores that are not inconsistent with work activities for the value of room and board which indicates her ability to perform work activity on at least some basis.

The record reveals very little and only routine/conservative treatment not the type expected for a totally disabled individual. No invasive treatment has been performed or even recommended. The record notes the claimant was less than fully cooperative, put forth less than maximal effort during some examinations, did not provide a fully credible history, and expressed complaints that, in the opinion of medical professionals, exceeded objective findings.

---

[8] *See* R. 315-21 (Exhibit 6F).

> As for the opinion evidence, little weight is given to the lifting limitation issued by Dr. Murphy in September of 2007 as they do not take into account Dr. Murphy's own statement that the claimant's subjective complaints and displays are greater than would be expected. Such limitation is also not supported by record overall (e.g. more recent CE examination findings). The opinions of the physical consultative examiner are given significant weight because Dr. Chodosh saw the claimant twice and issued unbiased consistent opinions that are well supported by the medical evidence of record, a described above. The opinion of Dr. Carr, the consultative psychologist, also deserves significant weight as it is unbiased and well supported by the overall record of evidence, and offered an examination on the claimant's mental functioning that appeared thorough and well developed.
>
> In sum, the above residual functional capacity assessment is supported by results and findings of objective testing as well as the level of medical care the claimant has received. Although the claimant has physical limitations, they would not have prevented her from performing work activity at the level noted in the residual functional capacity established above.

R. 24-26.

## V.  Legal Analysis

**Substantial evidence supports the decision rendered by the ALJ and she correctly applied the law.**

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore v. Barnhart, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. *See* Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007) (unpublished). No error has been shown.

As indicated above, Plaintiff limits her challenge to a single issue concerning whether the ALJ erred as a matter of law in failing to expressly cite SSR 12-2p in her

analysis.[9]  Doc. 15 at 4-5.  Although Plaintiff may be dissatisfied with the ALJ's evaluation of the paucity of the medical evidence in this record, the ALJ is not required to use particular phrases or formulations as long as it can be determined what statutory and regulatory requirements the ALJ applied.  *See* Jamison v. Bowen, 814 F.2d 585, 588-89 (11th Cir. 1987); *see also* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (noting that ALJ's credibility finding need not refer to every piece of evidence so long as decision is specific enough to conclude ALJ considered claimant's condition as a whole).  The Eleventh Circuit has expressly stated that "[w]e do not require the ALJs necessarily cite to particular regulations or cases," "[b]ut in order to make our review meaningful, we must be able to determine what statutory and regulatory requirements the ALJ did in fact apply."  Jamison, 814 F.2d at 588-89 (citations omitted).

The American College of Rheumatology has stated that fibromyalgia is both real and difficult to confirm.  *See generally* Frederick Wolfe, *et al.*, The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care & Research 600 (May 2010).  An extensive body of case law pre-dates the effective date of SSR 12-2p relating to courts' treatment of social security disability claims based on fibromyalgia.  See Johnson v. Colvin, Case No. 1:14cv149-WS/CAS, 2015 U.S. Dist. LEXIS 55388, at *31-38 (N.D. Fla. Mar. 25, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27, 2015), for a discussion of the legal standards in fibromyalgia cases pre-dating SSR 12-2p and a discussion of SSR 12-2p.

---

[9] Although social security rulings do not carry the "force and effect of the law or regulations," *see* Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984), "[t]hey are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).

The ALJ issued her decision on May 2, 2013, R. 27, and the Appeals Council denied review on October 27, 2014, R. 1, well *after* SSR 12-2p became effective on July 25, 2012.  SSR 12-2p, 2012 SSR LEXIS 1 (eff. July 25, 2012).[10]  This Court recently reversed a case that was decided by an ALJ one day *prior* to the publication of SSR12-2p.  (SSR 12-2p was published *prior* to the Appeal Council's decision to deny review in that case.)  Johnson v. Colvin, 2015 U.S. Dist. LEXIS 55381.  In Johnson, the ALJ did not have the benefit of SSR 12-2p to guide her analysis of the plaintiff's claim of disabling fibromyalgia and it was not clear under the facts presented that the ALJ's decision would have been the same had she considered the guidance of SSR 12-2p at steps two through five.  2015 U.S. Dist. LEXIS, at *47.  As a result, a remand was appropriate.  *Id.*  (In Johnson, unlike ALJ Martin here, R. 22, the ALJ did not find at step two that the plaintiff's claim of fibromyalgia was a severe impairment.  2015 U.S. Dist. LEXIS, at *5; *see supra* at 3.)

The Court has no problem discerning that the ALJ applied the proper analysis under SSR 12-2p.  As noted herein, SSR 12-2p discusses what a claimant must show to establish that her fibromyalgia is a medically determinable impairment.  A review of the ALJ's decision shows that she engaged in this analysis throughout the sequential evaluation process by weighing and discussing opinions from Plaintiff's acceptable medical sources, considering Plaintiff's sparse longitudinal records, and assessing

---

[10]  On October 27, 2014, the Appeals Council denied Plaintiff's request for review and noted, in part: "We applied the laws, regulations and rulings in effect as of the date we took this action."  R. 1.  Plaintiff does not identify any part of the ALJ's decision or the Appeals Council's decision that suggests SSR 12-2p was disregarded.  Doc. 15.  *See* Gamez v. Colvin, No. 13-4199-CV-W-DGK-SSA, 2014 U.S. Dist. LEXIS 114710, at *13 (W.D. Mo. Aug. 19, 2014).

Plaintiff's credibility.  R. 22-26.  For example, the ALJ found that Plaintiff's activities of daily living had no limitations.  R. 23-24, 212, 300, 319.  Plaintiff performs household chores and those are jobs in exchange for room and board.  R. 24, 37-39.  Daily activities may be considered in evaluating the discrediting the claimant's subjective complaints.  <u>Conner v. Astrue</u>, 415 F. App'x 992, 995 (11th Cir. 2011) (unpublished).

Moreover, the ALJ considered that Dr. Chodosh performed two consultative examinations, including one at the request of the ALJ.  R. 25, 47-48, 212-15, 299-302.  The ALJ referred to Dr. Chodosh's December 31, 2012, examination report:

> The claimant reported she is independent in activities of daily living. Following thorough examination, Dr. Chodosh diagnosed chronic pain without physical signs of impairment and determined that based on objective evidence, the claimant could sit, stand, walk, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally.  Of note is that she exerted less than full effort on grip testing though there were no credible deficits.  The claimant indicated inability to remove or replace the cap on a small bottle, which Dr. Chodosh considered a behavioral manifestation rather than a credible deficit.  Her standing balance was normal, but her initial gait was slow and stiff with nonspecific abnormality.  The claimant declined to squat and rise.  Range of motion testing revealed minor restrictions in the claimant's cervical spine, lumbar spine, and shoulders.  Dr. Chodosh determined the claimant could lift and/or carry up to 100 pounds and sit for two hours at a time for a total of six hours in an eight-hour workday, stand for two hours at a time for a total of six hours in an eight-hour workday, and walk for two hours at a time for a total of four hours in an eight-hour workday.  She had no limitations in using her upper or lower extremities and could perform postural activities without limitation.  Additionally, the claimant had no environmental limitations (Ex. 5F*).*
>
> Dr. Chodosh's examination findings suggest the claimant has some spinal limitations, but not to the extent that would prevent her from performing medium work.  The examination fails to reveal significant orthopedic disorders normally associated with the need to limit lifting/carrying, and normally limiting prolonged standing and sitting tasks (e.g. significant orthopedic knee disorder, or upper extremity dysfunction or arthritis).

R. 25, 303-05.  The ALJ gave Dr. Chodosh's opinion significant weight.  R. 26-27.  The ALJ considered the opinion of Dr. Carr, R. 315-20, and gave it significant weight.  R. 26-27.

The ALJ also determined that Plaintiff's subjective complaints were not credible and noted that examining physician, Dr. Murphy, opined on September 13, 2007, that Plaintiff's subjective complaints that she displays are more than would be expected.  R. 24, 210; *see supra* at n.5.  The ALJ also noted that Plaintiff had little and only routine conservative treatment.  R. 26, 208, 210, 212, 221-25, 232-35, 245-67, 280-81, 289, 297, 300.[11]  See 20 C.F.R. § 404.1527(c)(2)(ii).

The ALJ's decision is supported by substantial evidence and she correctly applied the law.  See Land v. Astrue, Case No. 5:09cv369/SPM/MD, 2011 U.S. Dist. LEXIS 21694, at *22-24 (N.D. Fla. Jan. 6, 2011) (affirming Commissioner's denial of disability benefits despite treating rheumatologist's impression of fibromyalgia), *adopted*, 2011 U.S. Dist. LEXIS 21773 (N.D. Fla. Mar. 3, 2011).[12]

---

[11] The ALJ stated at the beginning of the hearing: "So, Ms. [Dunmore], so how does the record look?  I mean you barely have anything, but do you have anything else you can add to the record?"  Ms. Dunmore replied: "Unfortunately, we don't, your honor.  We, yes, nothing else."  R. 34.  The ALJ referred Plaintiff for two additional post-hearing examinations, resulting in the reports by Drs. Chodosh and Carr.  R. 47-48.

[12] In Land, the ALJ determined that giving the claimant the benefit of the doubt, the claimant had fibromyalgia and that it was severe.  2011 U.S. Dist. LEXIS 21694, at *22.  The ALJ, however, did not credit the claimant's subjective complaints of disabling pain and determined that her fibromyalgia was not so severe as to be disabling from any work.  *Id*. at 22-24.  No error was shown.  *Id*.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Acting Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on July 9, 2015.

> s/ Charles A. Stampelos
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**